IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA
ERIE DIVISION

MARLON GLENN,                                  )
                                               )
                    Plaintiff                  )      1:23-CV-00209-RAL
                                               )
         vs.                                   )      RICHARD A. LANZILLO
                                               )      CHIEF UNITED STATES
C.O. MCLAIN, C.O. GUARNEIRI, C.O.              )      MAGISTRATE JUDGE
MANSON, C.O. STEVENS, C.O. HIMES,              )
C.O. SPENCER, C.O. BLUM, C.O.                  )      MEMORANDUM OPINION ON
KEPPEL, C.O. BULLERS, C.O. CARBEN,             )      DEFENDANTS' MOTION TO DISMISS
C.O. YOUNT, C.O. SLATER, SERGEANT              )
KEMP, SERGEANT HOLLAND,                        )      IN RE: ECF NO. 34
SERGEANT FREDRICKSON,                          )
LIEUTENANT DUFFY, LIEUTENANT                   )
WALKER, FACILITY MANAGER                       )
BLICHA, SUPERINTENDENT IRWIN,                  )
INDIVIDUALLY AND IN THEIR                      )
OFFICIAL CAPACITIES,                           )
                                               )
                    Defendants                 )

Defendants have moved pursuant to Fed. R. Civ. P. 12(b)(6) to dismiss the following claims of Plaintiff Marlon Glenn's Complaint: (1) all claims for monetary damages against Defendants in their official capacities; (2) all claims against Defendants Holland, Walker, Blicha, and Irwin; (3) Plaintiff's Eighth Amendment claim against Defendants Duffy, Himes, Spencer, Blum, Keppel, Bullers, Carben, Yount, Slater, Fredrickson, and Kemp; and (4) Plaintiff's due process claim against Defendants McClain, Stevens, and Holland. *See* ECF No. 34. For the following reasons, the Defendants' motion will be GRANTED.[1]

In addition, the Court will exercise its screening obligation under 28 U.S.C. § 1915(e) and dismiss (1) Plaintiff's First Amendment retaliation claim against Defendants C.O. Himes, C.O.

---

[1] The parties have consented to the jurisdiction of a United States Magistrate Judge pursuant to 28 U.S.C. §636(c).

Spencer, C.O. Blum, C.O. Keppel, C.O. Yount, C.O. Slater, C.O. Carben, C.O. Bullers, Sergeant Kemp, and Sergeant Fredricks based on the conditions of his confinement in the RHU; and (2) Plaintiff's conspiracy claims against all Defendants.

I.    Introduction and Procedural History

Plaintiff Marlon Glenn ("Glenn") brings this pro se civil rights action against nineteen employees of the Pennsylvania Department of Corrections at its State Correctional Institution at Forest, where Glenn was previously incarcerated.[2]  They are: C.O. McLain, C.O. Guarneiri, C.O. Manson, C.O. Stevens, C.O. Himes, C.O. Spencer, C.O. Blum, C.O. Keppel, C.O. Bullers, C.O. Carben, C.O. Yount, C.O. Slater, Sergeant Kemp, Sergeant Holland, Sergeant Frederickson, Lieutenant Duffy, Lieutenant Walker, Facility Manager Blicha, and Superintendent Irwin (collectively, "Defendants.").  Glenn alleges that Defendants Guarneiri and McLain subjected him to excessive force in violation of his rights under the Eighth Amendment during a cell inspection on January 13, 2023, and that he sustained serious injuries during the incident, including a burn to his ankle and a knee injury.  *See* ECF No. 8, ¶¶ 25-40, 96.  He also alleges that several of the Defendants retaliated against him for filing grievances relating to this incident.  *Id.*, ¶ 97.  Glenn requests compensatory and punitive damages.  *Id.*, ¶ 118.

Defendants' motion has been fully briefed, *see* ECF No. 35 (Defendants' brief); ECF No. 39 (Glenn's brief in opposition), and is ripe for disposition.

---

[2] Glenn is currently incarcerated at the State Correctional Institution at Somerset.

II.    Standard of Review

A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) tests the legal sufficiency of the complaint. *See Kost v. Kozakiewicz*, 1 F.3d 176, 183 (3d Cir. 1993). In deciding a Rule 12(b)(6) motion to dismiss, the court must accept as true all well-pled factual allegations in the complaint and views them in a light most favorable to the plaintiff. *See U.S. Express Lines Ltd. v. Higgins*, 281 F.3d 383, 388 (3d Cir. 2002). The "court[] generally consider[s] only the allegations in the complaint, exhibits attached to the complaint, matters of public record, and documents that form the basis of a claim" when considering the motion to dismiss. *Lum v. Bank of Am.*, 361 F.3d 217, 222 n.3 (3d Cir. 2004) (citing *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir.1997)).

In making its determination under Rule 12(b)(6), the court is not opining on whether the plaintiff is likely to prevail on the merits; rather, the plaintiff must only present factual allegations sufficient "to raise a right to relief above the speculative level." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 556 (2007) (citing 5 C. Wright & A. Miller, Federal Practice and Procedure § 1216, pp. 235-36 (3d ed. 2004)). *See also Ashcroft v. Iqbal*, 556 U.S. 662 (2009). Furthermore, a complaint should only be dismissed pursuant to Rule 12(b)(6) if it fails to allege "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570 (rejecting the traditional Rule 12(b)(6) standard established in *Conley v. Gibson*, 355 U.S. 41, 78 (1957)).

While a complaint does not need detailed factual allegations to survive a motion to dismiss, a complaint must provide more than labels and conclusions. *See Twombly*, 550 U.S. at 555. A "formulaic recitation of the elements of a cause of action will not do." *Id.* (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)). Moreover, a court need not accept inferences

drawn by a plaintiff if they are unsupported by the facts as explained in the complaint. *See California Pub. Employee Ret. Sys. v. The Chubb Corp.*, 394 F.3d 126, 143 (3d Cir. 2004) (citing *Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 906 (3d Cir. 1997)). Nor must the court accept legal conclusions disguised as factual allegations. *See Twombly*, 550 U.S. at 555; *McTernan v. City of York, Pennsylvania*, 577 F.3d 521, 531 (3d Cir. 2009) ("The tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions."). Put another way, in assessing a motion to dismiss, while the Court must view the factual allegations contained in the pleading at issue as true, the Court is "not compelled to accept unwarranted inferences, unsupported conclusions or legal conclusions disguised as factual allegations." *Baraka v. McGreevey*, 481 F.3d 187, 211 (3d Cir. 2007). Expounding on the *Twombly/Iqbal* line of cases, the Third Circuit has articulated the following three-step approach:

> First, the court must "tak[e] note of the elements a plaintiff must plead to state a claim." Second, the court should identify allegations that, "because they are no more than conclusions, are not entitled to the assumption of truth." Finally, "where there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief."

*Burtch v. Milberg Factors, Inc.*, 662 F.3d 212, 221 (3d Cir. 2011) (quoting *Santiago v. Warminster Twp.*, 629 F.3d 121, 130 (3d Cir. 2010)). This determination is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679.

Finally, because Glenn is proceeding pro se, his Complaint must be held to "less stringent standards than formal pleadings drafted by lawyers." *Haines v. Kerner*, 404 U.S. 519, 520-521 (1972). If the court can reasonably read his *pro se* litigant's pleading to state a claim upon which relief can be granted, it will do so despite his failure to cite proper legal authority, confusion of

legal theories, poor syntax and sentence construction, or unfamiliarity with pleading requirements. *See Boag v. MacDougall*, 454 U.S. 364 (1982); *United States ex rel. Montgomery v. Bierley*, 141 F.2d 552, 555 (3d Cir. 1969). Despite this leniency, "pro se litigants still must allege sufficient facts in their complaints to support a claim." *Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 245 (3d Cir. 2013) (citing *Riddle v. Mondragon*, 83 F.3d 1197, 1202 (10th Cir. 1996)).

Under 28 U.S.C. § 1915(e), which applies to Glenn's pro se Complaint, the Court must also dismiss any claims that the Court determines to be "frivolous or malicious; fails to state a claim upon which relief may be granted; or seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2); *Muchler v. Greenwald*, 624 Fed. Appx. 794, 796-97 (3d Cir. 2015). A frivolous claim is one which is either based upon an indisputably meritless legal theory (such as when a defendant enjoys immunity from suit) or based upon factual contentions which are clearly baseless (such as when the factual scenario described is fanciful or delusional). *Neitzke v. Williams*, 490 U.S. 319, 327 (1989). The determination as to whether a complaint fails to state a claim upon which relief may be granted is governed by the same standard applicable to motions to dismiss under Rule 12(b)(6). *D'Agostino v. CECOM RDEC*, 436 Fed. Appx. 70, 72 (3d Cir. 2011) (citing *Tourscher v. McCullough*, 184 F.3d 236, 240 (3d Cir. 1999)).

III.    Factual Allegations and Claims Alleged

    A.    Allegations of Fact

For purposes of the pending motion to dismiss, the Court accepts as true the following factual allegations of the Complaint. On January 13, 2023, Defendants McLain and Holland

conducted a search of Glenn's cell on GA Unit at SCI-Forest.  ECF No. 8, ¶ 24.[3]  Holland ordered

Glenn to open his cabinet, which Glenn had secured with a combination lock, and then to step out

of the cell.  Glenn opened the cabinet, but instead of stepping out of the cell, he removed two small

bags containing a suspected fermented beverage and flushed the liquid down the toilet. Holland

then ordered Glenn to "cuff up" for refusing to obey an order.

Recognizing he was now going to be placed in the restrictive housing unit ("RHU"), Glenn

stepped back into his cell and proceeded to unplug an extension cord that was powering a device

he was using to heat water in a nearby washtub.  As Glenn stepped past Holland, Holland made a

radio call for assistance due to a "staff assault."  McLain then grabbed Glenn.  Glenn then sat down

on his bed and protested that "he didn't assault anyone."  *Id.*, ¶ 31.  Other officers arrived and

ordered Glenn to lay on the floor.  Glenn complied.  While Glenn was on the floor, Guarneiri

placed his knee in Glenn's back.  McLain restrained Glenn's legs while a third officer placed Glenn

in handcuffs.

During this incident, one of the responding officers knocked over Glenn's wash basin.  Hot

water spilled across the floor and contacted McLain's right forearm.  McLain then grabbed Glenn's

right foot and pressed it into the hot water.  Glenn told McLain to "stop or I'm going to report

you."  *Id.*, ¶ 38.  Guarneiri then grabbed Glenn by the leg, bent his leg behind his back, and twisted

it at the knee.  Glenn was taken to the institution's medical department where his injuries were

photographed and documented.  During the medical examination, Guarneiri "grabbed and shook

[him] by the arms when [Glenn] attempted to show the nursing staff his injuries."  *Id.*, ¶ 42.

Glenn was taken to the RHU where Defendant Duffy conducted the intake.  Glenn was

placed in a "hard cell" which had a concrete bed and toilet.  Defendant Slater refused Glenn's

---

[3] The relevant factual allegations are set out in paragraphs 24-91 of Glenn's Complaint (ECF No. 8).  Citations to the pleading are omitted except for quoted allegations.

request for a blanket.  Glenn was issued a misconduct, charging him with assaulting an officer and refusing to obey orders.   Glenn contends that between January 13, and January 21, 2023, Defendants Himes, Spencer, Blum, Keppel, Yount, Slater, Carbon, Bullers, Kemp, and Fredrickson acted in concert to deprive Glenn of basic needs such as a blanket, outdoor exercise, clothing, food, hygiene, and access to this personal property.   Glenn alleges that he became unsteady, suffered from migraines, and was forced to suffer extreme cold and hunger as result of these deprivations.

On January 18, 2023, a hearing was held on Glenn's misconduct charge.  He pleaded guilty to refusing to obey an order, and the Hearing Examiner found him guilty of assaulting a staff member.  Glenn was sentenced to 120 days in the RHU.  On January 20, 2023, restrictions on Glenn were removed and he was permitted regular food trays, showers, and outdoor exercise.  He also requested and received grievance forms.  His personal property was not returned, however. Glenn filed three grievances on January 26, 2023.  On January 28, 2023, Glenn asked Defendant Bullers about the return of his personal property.  Bullers told Glenn, "They're gonna jerk you around … because of your misconduct charge."  *Id.*, ¶ 73.  Glenn also asked Defendant Carben about the return of his personal property, but Carben did not assist him.  The next day, Glenn sought assistance from Defendant Kemp, but he also refused to help.

Glenn further alleges that "soon after initiating abuse investigation against Defendant C.O. McLain," he became a target of McLain's harassment and retaliation.[4]  *Id.*, ¶ 76.  Glenn alleges, for example, that on February 12, 2023, McLain "poured a cup of water" on Plaintiff's legal documents (*id.*, ¶ 78); on February 23, 2023, McLain "slammed [his] wrist in the sliding door of

---

[4] Glenn's Complaint alleges no other facts relating to this report of abuse.  One of the grievances appended to his Complaint (No. 1017858) includes only a general reference to Glenn having "filed an abuse allegation with Captain Kendrick and the Superintendent."  *See* ECF No. 8-5. p. 2.

the wicket ... while collecting food trays" (*id.*, ¶ 79); and, on March 20, 2023, McLain ordered

that Glenn be subjected to a strip search and a search of his cell after learning that he had filed a

grievance.  Glenn also alleges that Defendant Manson subjected him to a strip search and cell

search on March 29, 2023, and in connection therewith, told him to "stop filing grievances." *Id.*,

¶ 91.

      B.     Claims asserted in the Complaint

      Glenn's Complaint does not include specific counts.  While his pleading does include

subheadings, many of these appear to mislabel the cause of action implicated by his allegations.

Construing the Complaint's allegations and subheadings liberally, the Court has identified the

following claims:

1.  An excessive force claim against Defendants McLain and Guarneiri relating to the incident that took place on January 13, 2023;

2.  A First Amendment retaliation claim against McLain and Defendant Stevens based on their filing a false misconduct report against Glenn after he threatened to report McLain for using excessive force;

3.  Eighth Amendment "deliberate indifference" and "failure to act/failure to protect" claims against Defendants Stevens, Holland, Walker, and Blicha for each's respective role in submitting an allegedly false misconduct report;

4.  A related supervisory liability claim against Holland for failing to reprimand or correct his subordinates;

5.  A First Amendment retaliation claim against Defendants C.O. Himes, C.O. Spencer, C.O. Blum, C.O. Keppel, C.O. Yount, C.O. Slater, C.O. Carben, C.O. Bullers, Sergeant Kemp, and Sergeant Fredricks based on the conditions of his confinement in the RHU;

6.  An Eighth Amendment conditions of confinement claim against Defendants C.O. Himes, C.O. Spencer, C.O. Blum, C.O. Keppel, C.O. Yount, C.O. Slater, C.O. Carben, C.O. Bullers, Sergeant Kemp, and Sergeant Fredricks based on the conditions of his confinement in the RHU;

7.  A due process claim against Defendant Duffy based on his authorizing the restrictions placed on Glenn while in the RHU and his failure to submit an "employee report of incident" or a misconduct report prior to authorizing the RHU restrictions;

8. A conspiracy claim against Defendants Duffy, Himes, Spencer, Carben, Blum, Keppel, Yount, Slater, Bullers, Fredrickson, and Kemp based on the conditions of Glenn's confinement while housed in the RHU;

9. A retaliation claim against Defendant Manson based on Glenn's filing of grievances;

10. A supervisory liability claim against Defendant Walker alleging Walker failed to reprimand staff for retaliating against Glenn after Glenn filed grievances about the treatment he received while in the RHU;

11. A supervisory claim against Defendant Blicha based on his failure to discipline the Defendants involved in retaliating against Glenn; and

12. A supervisory liability claim against Defendant Irwin based on Irwin's failure to "take action" against his subordinates' wrongful actions.

## IV.    Discussion

Glenn asserts his constitutional claims under 42 U.S.C. § 1983, which authorizes an action in federal court to remedy a violation of a right secured by the Constitution or laws of the United States "by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988). As employees of the DOC, Defendants are state actors, and Glenn alleges that each acted under color of state law. Defendants argue, however, that the facts alleged in the Complaint are insufficient to support (1) Glenn's official capacity claims; (2) all purported claims against Defendants Holland, Walker, Blicha, and Irwin for Glenn's failure to sufficiently allege their personal involvement; (3) Glenn's Eighth Amendment deliberate indifference claims as alleged against Defendants Duffy, Himes, Spencer, Blum, Keppel, Bullers, Carben, Yount, Slater, Frederickson, and Kemp; and (4) the Fourteenth Amendment due process claims against Defendants McLain, Stevens, and Holland. *See* ECF No. 35, *generally*. Because the Court has construed the Complaint liberally and, in doing so, identified claims that may not have been apparent to the Defendants, the Court will also exercise its screening authority under 28 U.S.C. § 1915A(b)(1) and (2).

9

A. Any claims for money damages against Defendants in their official capacities will be dismissed with prejudice because they are barred by Eleventh Amendment immunity.

Glenn asserts his constitutional claims under 42 U.S.C. § 1983, which authorizes an action in federal court to remedy a violation of a right secured by the Constitution or laws of the United States "by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988). Glenn's Complaint seeks an award of compensatory and punitive damages against each Defendant, but it does not state whether he seeks this relief against them in their official or individual capacities. To the extent it is the former, his claims are barred by the Eleventh Amendment, which proscribes actions for money damages in the federal courts against states, their agencies, and state officials acting in their official capacities. *See Laskaris v. Thornburgh*, 661 F.2d 23 (3d Cir. 1981) (Pennsylvania); *Mt. Healthy City Bd. of Ed. v. Doyle*, 429 U.S. 274 (1977) (state agencies); *Edelman v. Jordan*, 415 U.S. 651 (1974) (state employees acting in their official capacity). The DOC, as an agency of the Commonwealth of Pennsylvania, and its agents and employees in their official capacities are entitled to Eleventh Amendment immunity from monetary damages. *See Brown v. Smith*, 2019 WL 2411749 (W.D. Pa. June 7, 2019). Because all Defendants are DOC employees who acted within the scope of their employment, Glenn's claims for monetary relief against them in their official capacities will be dismissed with prejudice.[5]

---

[5] The Eleventh Amendment does not provide immunity for claims for injunctive relief, but Glenn does not request such relief. Instead, his complaint asks only for $2,000,000.00 in compensatory damages and $4,000,000.00 in punitive damages. *See* ECF No. 8, ¶ 118. Dismissal of Glenn's official capacity claims for money damages does not affect his claims for money damages against Defendants in their individual capacities.

B. All claims against Defendants Holland, Blicha, Walker, and Irwin will be dismissed based on lack of personal involvement or insufficiency of factual allegations to support the claim.

A defendant faces liability under § 1983 only if he had "personal involvement" in the deprivation of the plaintiff's constitutional right. *See Swint v. Oliver*, 2024 WL 2327980, at *4 (W.D. Pa. Apr. 29, 2024), *report and recommendation adopted*, No. CV 23-232, 2024 WL 2319787 (W.D. Pa. May 22, 2024) (citing *Gould v. Wetzel*, 2013 WL 5697866, at *2 (3d Cir. Oct. 21, 2013)). This means that each defendant must have played an "affirmative part" in the complained-of misconduct. *Iqbal*, 556 U.S. at 677 ("In a § 1983 suit ... [a]bsent vicarious liability, each Government official, his or her title notwithstanding, is only liable for his or her own misconduct."); *Oliver v. Beard*, 358 Fed. Appx. 297, 300 (3d Cir. 2009). In the absence of specific allegations that a defendant played a role in depriving the plaintiff of a constitutional right, dismissal is appropriate. *See, e.g., Mearin v. Swartz*, 951 F.Supp.2d 776, 781-82 (W.D. Pa. 2013) (dismissing claims pursuant to Rule 12(b)(6) because the plaintiffs had failed to set forth sufficient facts to establish that certain defendants had played an affirmative part in the alleged Eighth Amendment violation); *Happel v. Bishop*, 2024 WL 1508561, at *9 (W.D. Pa. Feb. 22, 2024), *report and recommendation adopted*, 2024 WL 1003902 (W.D. Pa. Mar. 8, 2024).

Defendants argue that the Complaint does not allege facts to support the personal involvement of Holland, Walker, Blicha, or Irwin in any constitutional violation asserted in the Complaint. The allegations associated with each Defendant are addressed separately.

1. Glenn's supervisory liability claims against Defendants Holland, Walker, Blicha, and Irwin will be dismissed as will his retaliation claim against Holland.

Glenn faults Holland for not "reprimanding [or] correcting his subordinates Defendants C.O. McLain and C.O. Stevens." ECF No. 8, ¶ 100. The Complaint includes similar allegations against Walker, Blicha, and Irwin. *See id*, ¶¶ 98-99. Glenn alleges that Blicha failed to discipline

those involved in the "unconstitutional, unwarranted, retaliatory treatment, *id.*, ¶ 114, and that Superintendent Irwin "failed to properly supervise staff ... [and] failed to take action when he learned of his subordinates past misconduct and wrongful acts."[6] *Id.*, ¶ 115.  The Court construes these allegations as supervisory liability claims against Holland, Walker, Blicha, and Irwin. Glenn's allegations, however, are insufficient to support a supervisory liability claim against any of these Defendants.

The law recognizes two theories of supervisory liability.  One theory imposes liability on a supervisor who "established and maintained a policy, practice or custom which directly caused [the] constitutional harm," and the other imposes liability where the supervisor "participated in violating plaintiff's rights, directed others to violate them, or, as the person[s] in charge, had knowledge of and acquiesced in [their] subordinates' violations." *Santiago v. Warminster Twp.*, 629 F.3d 121, 129 (3d Cir. 2010) (internal citation omitted).  Glenn alleges no facts to support that Holland, Walker, Blicha, or Irwin maintained a policy or custom that caused a violation of his constitutional rights.  And Glenn's bare allegations that these Defendants failed to reprimand or correct their subordinates do not constitute contemporaneous knowledge of and acquiescence in their alleged misconduct.  Accordingly, Glenn's supervisory liability claims against Holland, Walker, Blicha, and Irwin will be dismissed.

Although the Complaint asserts that Defendant Holland retaliated against Glenn, its factual allegations do not support this conclusory statement.  The Complaint alleges that on January 13, 2023, Holland arrived at Glenn's cell, ordered him to open a cabinet, and then directed Glenn to step out of the cell.  ECF No. 8, ¶ 26.  Glenn instead took the two bags of liquid from the cabinet

---

[6] Glenn also alleges that Defendant Irwin failed to protect him through Irwin's gross negligence in failing to supervise his subordinates.  ECF No. 8, ¶ 115.  Glenn's claim of negligence or a lack of due care under the circumstances are insufficient to support a cognizable failure to protect claim under § 1983. *Davidson v. Cannon*, 474 U.S. 344 (1986).

and disposed of them. *Id.* The Complaint further alleges that Holland "allowed himself to be listed as a witness" on a misconduct charge filed against Glenn. *Id.,* ¶ 100. These allegations fail to support a constitutional violation. And even if they did, another person's inclusion of Holland's name as a witness on a misconduct charge is not an allegation that Holland played an "affirmative part" in any actionable misconduct, only that he may have witnessed something relevant to it. *Compare, DeFranco v. Miller,* 2023 WL 9540227, at *8 (W.D. Pa. Nov. 6, 2023), *report and recommendation adopted,* 2024 WL 208208 (W.D. Pa. Jan. 18, 2024) (allegation that witnesses "helped author a false misconduct"). Similarly, ordering Glenn to open his cabinet and step outside his cell during a routine inspection is not actionable conduct. Glenn does not allege that Holland's inspection was anything other than a routine search of his cell. *Poindexter v. Kauffman,* 2021 WL 1212585, at *3 (M.D. Pa. Mar. 31, 2021) (holding that where search does not extend beyond the scope needed to support a legitimate penological purpose of prison security, there is no constitutional violation) (citations omitted). Glenn's retaliation claim against Holland will be dismissed.

Like his claim against Holland, Glenn has failed to allege facts to support that Walker, Blicha and/or Irwin, maintained a policy or custom that caused a constitutional deprivation. And, beyond his bare allegations that these Defendants failed to reprimand his subordinates, Glenn's allegations do not show a contemporaneous knowledge of and acquiescence in their subordinate's alleged misconduct. Therefore, Glenn's supervisory liability claims against Walker, Blicha, and Irwin also will be dismissed.

> 2. Glenn's "failure to act/failure to protect" claims against Defendants Walker and Blicha will be dismissed.

Glenn asserts what he characterizes an Eighth Amendment "failure to act/failure to protect claim" against Defendants Walker and Blicha. *See* ECF No. 8, ¶ 112. As to Walker, Glenn alleges

13

he "exercised deliberate indifference" by "maliciously fabricating allegations of threat made by Plaintiff, in order to justify restrictions, after Plaintiff filed a grievance complaining of retaliatory treatment by RHU staff." *Id.*, ¶ 113.  The allegations against Defendant Blicha are similar.  Glenn states that Blicha "exercised deliberate indifference toward Plaintiff's rights by knowingly bolstering false allegations of threats made by Plaintiff, after Plaintiff filed a grievance complaining of unwarranted restrictions and retaliatory treatment by RHU staff." *Id.*, ¶ 119.  He alleges that Blicha "fabricated information regarding threats" and "conceal[ed] retaliatory treatment by RHU staff." *Id.*

To state an Eighth Amendment failure-to-protect claim against a prison official, the inmate must allege facts that plausibly support that "(1) he was incarcerated under conditions posing a substantial risk of serious harm, (2) the official was deliberately indifferent to that substantial risk to [the prisoner's] health and safety, and (3) the official's deliberate indifference caused [the prisoner] harm." *Bistrian v. Levi*, 696 F.3d 352, 367 (3d Cir. 2012).  In this context, deliberate indifference is a subjective standard; that is, "the prison official-defendant must actually have known or been aware of the excessive risk to inmate safety." *Id.* (quoting *Beers-Capitol v. Whetzel*, 256 F.3d 120, 125 (3d Cir. 2001)).  Actual knowledge or awareness of a substantial risk to an inmate's safety can be proven "in the usual ways, including inference from circumstantial evidence." *Id.* (quoting *Farmer*, 511 U.S. at 842).

The Complaint does not allege facts to support that Walker or Blicha was aware of or disregarded a risk to Glenn's safety.  That Walker and Blicha responded to his grievance, albeit with allegedly false information, does not support the existence of a serious risk to Glenn or that either Defendant disregarded a risk to Glenn's safety.  Accordingly, Glenn's failure to protect claim against Walker and Blicha will be dismissed.

C.  Glenn's retaliation claim against Defendants C.O. Himes, C.O. Spencer, C.O. Blum, C.O. Keppel, C.O. Yount, C.O. Slater, C.O. Carben, C.O. Bullers, Sergeant Kemp, and Sergeant Fredricks based on his time in the RHU will be dismissed.

Glenn claims that all prison personnel who staffed the RHU "retaliated" against him for allegedly assaulting a fellow staff member.  He alleges:

> From 1-13-2023 to 1-21-2023, C.O. Himes, C.O. Spencer, C.O. Blum, C.O. Keppel, C.O. Yount, C.O. Slater, C.O. Carben, C.O. Bullers, Sergeant Kemp, Sergeant Fredrickson, worked together in a coordinated effort, each during their respective shifts in the RHU to further retaliate against Plaintiff by denying him of basic human needs including adequate food, warmth (blanket), out door exercise (yard), Plaintiff's property (clothing, legal material, Bible), and the basic elements of hygiene (showers).

ECF No. 8, ¶ 55.  Glenn goes on to complain about having been served "two slices of bread and an apple" in a paper bag and sometimes being "denied food altogether" during his eight days in the RHU, *see id.*, ¶¶ 56-58, and being "ignored" during sign-up or denied for yard exercise, *see id.*, ¶ 59.  He alleges that he was subjected to these conditions in retaliation for his having assaulted a staff member, which he denied, but was found guilty of by the hearing officer.  *See e.g., id.*, ¶ 63.

To state a retaliation claim, a prisoner must allege facts that plausibly support that (1) he engaged in protected conduct; (2) prison officials took an adverse action against the plaintiff that was "sufficient to deter a person of ordinary firmness from exercising his [constitutional] rights"; and (3) "a causal link" exists "between the exercise of his constitutional rights and the adverse action taken against him." *Rauser v. Horn*, 241 F.3d 330, 333 (3d Cir. 2001) (quoting *Allah v. Seiverling*, 229 F.3d 220, 225 (3d Cir. 2000) (alteration in original)); *see also Mitchell v. Horn*, 318 F.3d 523, 530 (3d Cir. 2003).  For purposes of a retaliation claim, an "adverse action" is one that would "deter a person of ordinary firmness" from exercising his First Amendment rights.

*Allah*, 229 F.3d at 225 (quoting *Suppan v. Dadonna*, 203 F.3d 228, 235 (3d Cir. 2000)).  This is

an objective inquiry.  *See Bistrian v. Levi*, 696 F.3d 352, 376 (3d Cir. 2012).  To show that

retaliatory motive caused the adverse action, the plaintiff may rely on direct evidence or an

inference of retaliatory motive arising from either (1) an unusually suggestive temporal

proximity between the protected activity and the alleged retaliatory action; or (2) a pattern of

antagonism coupled with timing that suggests a causal link.  *See Lauren W. ex rel. Jean W. v.*

*DeFlaminis*, 480 F.3d 259, 267 (3d Cir. 2007).  "These are not the exclusive ways to show

causation, as the proffered evidence, looked at as a whole, may suffice to raise the inference."

*Farrell v. Planters Lifesavers Co.*, 206 F.3d 271, 280 (3d Cir. 2000) (quoting *Kachmar v.*

*SunGard Data Sys., Inc.*, 109 F.3d 173, 177 (3d Cir. 1997)).  "Because retaliation claims can be

easily fabricated, district courts must view prisoners' retaliation claims with sufficient skepticism

to avoid becoming entangled in every disciplinary action taken against a prisoner."  *Miskovitch v.*

*Hostoffer*, 721 F. Supp. 2d 389, 396 (W.D. Pa. 2010) (citing *Cochran v. Morris*, 73 F.3d 1310,

1317 (4th Cir. 1996); *Woods v. Smith*, 60 F.3d 1161, 1166 (5th Cir. 1995), *cert. denied*, 516 U.S.

1084 (1996); *Colon v. Coughlin*, 58 F.3d 865, 873 (2d Cir. 1995)).  "Finally, allegations of de

minimis acts of retaliation do not state a claim under § 1983."  *Id.*  (citing *Thaddeus–X v. Blatter*,

175 F.3d 378, 397 (6th Cir. 1999); *Dawes v. Walker*, 239 F.3d 489, 492 (2d Cir. 2001) (holding

that a de minimis retaliatory act is outside the ambit of constitutional protection)).

Glenn's retaliation claim fails on all three elements of the cause of action.  Glenn alleges

that the retaliatory acts against him were motivated by the Defendants' belief that he had

assaulted a staff member.  He denies that he did so, but a hearing officer found him guilty of the

misconduct.  In either case, whether Glenn assaulted a staff member, or the Defendants

mistakenly believed he did so, Glenn does not allege that he engaged in "protected conduct,"

such as the filing of a grievance, as the foundation for this claim.  Therefore, the facts alleged support neither the "protected conduct" nor the "causation" elements of a retaliation claim.  In addition, the "adverse actions" on which Glenn relies are the greater restrictions all inmates generally experience when confined to the RHU.  And, in Glenn's case, he experienced these conditions for a mere eight days.  As such, they are not actions that would deter an inmate from exercising his constitutional rights.

Glenn's retaliation claim against these Defendants also fails based on his failure to specify the conduct of each Defendant on which he bases the claim.  Most of Glenn's allegations are against the ten named Defendants collectively as a group.  However, "conclusory allegations against groups of defendants are insufficient to support the personal involvement of any Defendant in actionable conduct."  *Williams v. Pa. Dep't of Corr.*, 2022 WL 1295796, at *4 (W.D. Pa. Apr. 5, 2022), *report and recommendation adopted sub nom. Williams v. PA Dep't of Corr.*, 2022 WL 1488426 (W.D. Pa. May 11, 2022) (citing *Saisi v. Murray*, 822 Fed. Appx. 47, 48 (3d Cir. 2020); *Van Tassel v. Piccione*, 608 Fed. Appx. 66, 69-70 (3d Cir. 2015) (allegations that broadly implicate multiple defendants without delineating individual conduct are legally insufficient.); *Ying Li v. City of New York*, 2017 WL 1208422, at *6 (E.D.N.Y. Mar. 31, 2017) ("Pleadings that do not differentiate which defendant was involved in the unlawful conduct are insufficient to state a claim."); *Wright v. Orleans Cty.*, 2015 WL 5316410, at *13 (W.D.N.Y. Sept. 10, 2015) (in a § 1983 case, "[g]roup pleading is insufficient for purposes of Rule 8(a)(2) which requires a short and plain statement of the claim showing that the pleader is entitled to relief") (citation and internal quotation marks omitted).

Many of the deficiencies in Glenn's retaliation claim against Defendants Himes, Spencer, Blum, Keppel, Yount, Slater, Carben, Bullers, Kemp, and Fredricks based on his time in the

17

RHU cannot be cured by amendment.  Accordingly, these claims will be dismissed with prejudice.

D. The Eighth Amendment conditions of confinement claim against Defendants Duffy, Himes, Spencer, Blum, Keppel, Bullers, Caren, Yount, Slater, Frederickson, and Kemp, relating to the conditions in the RHU will be dismissed.

Glenn also alleges that the conditions of his confinement in the RHU constituted cruel and unusual punishment in violation of the Eighth Amendment.  *See* ECF No. 8, ¶¶ 55.  As noted, Glenn alleges that while temporarily confined in "hard cell" JC1006 from January 13, 2023, to January 21, 2023, Duffy, Himes, Spencer, Blum, Keppel, Bullers, Caren, Yount, Slater, Frederickson, and Kemp deprived him of basic needs such as "adequate food, warmth, outdoor exercise, access to his personal property, and personal hygiene." *Id.*  Glenn alleges that on various occasions, he was not given a blanket, provided with limited food (bread, apples, carrots, and noodles), unable to participate in outdoor exercise, denied showers, and not permitted to access his personal property. *See* ECF No. 8, ¶¶ 46-55

The Eighth Amendment's prohibition of cruel and unusual punishment imposes duties on prison officials to provide prisoners with the basic necessities of life, such as food, clothing, shelter, sanitation, medical care, and personal safety. *See Farmer v. Brennan*, 511 U.S. 825, 832 (1994); *Helling v. McKinney*, 509 U.S. 25, 31 (1993).  To demonstrate that conditions of confinement violate the Eighth Amendment, a plaintiff must satisfy two requirements: "(1) the deprivation alleged must be, objectively, "sufficiently serious, resulting in the "denial of 'the minimal civilized measure of life's necessities," and "(2) the "prison official must have a sufficiently culpable state of mind." *Thomas v. Tice*, 948 F.3d 133, 138 (3d Cir. 2020) (quoting *Farmer*, 511 U.S. at 834; *Wilson v. Seiter*, 501 U.S. 294, 299, 302-303 (1991) (cleaned up)); *McClure v. Haste*, 820 Fed. Appx. 125, 128 (3d Cir. 2020).  Only "extreme deprivations" are

sufficient to present a claim for unconstitutional conditions of confinement. *Fantone v. Herbik*, 528 Fed. Appx. 123, 127 (3d Cir. 2013) (quoting *Hudson v. McMillian*, 503 U.S. 1, 8-9 (1992)). To satisfy the first requirement, Glenn "must show that he is incarcerated under conditions posing a substantial risk of serious harm," but he need not show actual injury. *Porter v. Pa. Dep't of Corr.*, 974 F.3d 431, 441 (3d Cir. 2020) (quoting *Mammana v. Fed. Bureau of Prisons*, 934 F.3d 368, 373 (3d Cir. 2019) (internal quotations omitted)). "The proof necessary to show that there was a substantial risk of harm is less demanding than the proof needed to show that there was a probable risk of harm." *Id.* (quoting *Chavarriaga v. N.J. Dep't of Corr.*, 806 F.3d 210, 227 (3d Cir. 2015)). "This is a totality-of-the circumstances analysis" and should consider the duration and severity of the unconstitutional conditions. *McClure*, 820 Fed. Appx. at 128.

"[B]y virtue of their convictions, inmates must expect significant restrictions, inherent in prison life, on rights and privileges free citizens take for granted." *McKune v. Lile*, 536 U.S. 24, 39-40 (2002); *see also Podhorn v. Grondolsky*, 350 Fed. Appx. 618, 620 (3d Cir. 2009) ("[P]risoners have no constitutional right to be assigned to a particular institution, facility or rehabilitative program."). Glenn asserts that his eight-day placement in a "hard cell" with its associated restrictions violated the Eighth Amendment. But federal courts are "unanimous in holding that the conditions in restrictive housing in Pennsylvania prisons do not, in and of themselves, violate the Eighth Amendment." *Whitney v. Wetzel*, 2015 WL 4920071, at *7 (M.D. Pa. Aug. 12, 2015) (quoting *Griffin v. Vaughn*, 112 F.3d 703, 709 (3d Cir. 1997)). *See also Newmones v. Ransom*, 2022 WL 4536296, at *7 (W.D. Pa. Sept. 28, 2022). A prisoner asserting a condition of confinement claim must show that the alleged deprivation is "sufficiently serious" and that he has been deprived of the "minimal civilized measure of life's necessities." *Farmer v. Brennan*, 511 U.S. 825, 834 (1994) (citing *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981)).

Glenn's allegations do not support such a finding. *See, e.g., Major v. Halligan*, 2021 WL 6283944, at *11 (W.D. Pa. Nov. 17, 2021). For example, although the loss of outdoor exercise time may, in some circumstances, result in a violation of the Eighth Amendment, *see e.g., Peterkin v. Jeffes*, 355 F.2d 1021, 1031-33 (3d Cir. 1988), that is not the case where the denial was temporary and for a minimal period. *See, e.g., Bacon v. Luzerne Cnty.*, 2024 WL 1837217, at *4 (M.D. Pa. April 26, 2024). And "[p]ursuant to the case law related to the denial of bedding, the denial of [an inmate's] mattress for a short period of time does not rise to the level of a constitutional violation." *Id.* (quoting *Milhouse v. Gee*, 2011 WL 3627414, *13 (M.D. Pa. Aug. 17, 2011) and citing *Lane v. Culp*, 2007 WL 954101 (W.D. Pa. Mar. 28, 2007)) (holding that denial of clothing and bedding for period of seven days does not rise to level of constitutional violation)). The same holds true for the denial of a shower. *See Barnes v. Erie Cnty. Prison Admin.*, 2020 WL 4450297, at *4 n.3 (W.D. Pa. Aug. 3, 2020); *see also Ledcke v. Pennsylvania Dep't of Corr.*, 655 Fed. Appx 886, 889 (3d Cir. 2016) (per curiam) (affirming dismissal of Eighth Amendment claims "premised on (1) an approximate 24-hour period … when [plaintiff] claims he was left in a filthy cell with no bedding, double-cuffed in the back, and (2) a 6-day period when he claims he was not permitted to shower or access hygiene products in a cell contaminated with various bodily fluids"); *Freeman v. Miller*, 615 Fed. Appx. 72, 77 (3d Cir. 2015) (no Eighth Amendment violation where convicted prisoner was placed in a "hard cell" used for suicidal inmates and denied a desk, seat, showers, a mattress, soap, recreation, mail, and toilet paper, and was permitted to wear only underwear and a suicide smock for approximately seven days); *Young v. Beard*, 227 Fed. Appx 138, 141 (3d Cir. 2007) (per curiam) (rejecting plaintiff's claim that his Eighth Amendment rights were violated because he was subject to inhumane conditions while confined for several days in an unclean holding cell).

20

While a total deprivation of meals raises an Eighth Amendment claim, *see, e.g.,* *Newmones*, 2022 WL 4536296, at *8; *see also Calipo v. Wolf*, 2019 WL 6879570, at *10 (W.D. Pa. Nov. 15, 2019), that is not what Glenn alleges.  Although Glenn alleges that he was denied a meal on an unspecified occasion and that the food was not "adequate," Glenn acknowledges generally that he received various food items, including bread, vegetables, fruit and noodles, "at every mealtime" during the eight days he was housed in the RHU.  ECF No. 8, ¶ 56.  ECF No. 8, ¶ 55.  Given the relatively short time he was housed in the RHU, the restricted food items he admits to receiving do not support an Eighth Amendment violation.

The restrictions on Glenn's access to his personal property, including his legal materials and religious books while in the RHU, *see* ECF No. 8, ¶ 106, also do not support a conditions of confinement claim.  Glenn does not allege facts to support that any of the materials at issue were needed during his brief confinement in the RHU.  *See, e.g., Roten v. Little*, 2024 WL 4215738, at *2 n.4 (W.D. Pa. Sep. 17, 2024) (no condition of confinement claim alleged where plaintiff fails to allege that he has been denied access to *needed* legal materials).  He also does not allege that he requested any of these materials or explained why he needed them.

Because the alleged restrictions that existed during Glenn's confinement in the RHU fall short of a denial of the minimal civilized measure of life's necessities, his Eighth Amendment conditions of confinement claim against Defendants Duffy, Himes, Spencer, Blum, Keppel, Bullers, Caren, Yount, Slater, Frederickson, and Kemp will be dismissed.

E. The Fourteenth Amendment due process claim alleged against Defendants McLain, Stevens, and Holland will be dismissed.

Glenn's Complaint includes allegations regarding various Defendants' roles in filing or acting as witnesses in the misconduct hearing arising out of the incident on January 13, 2023.  He alleges, for example, that although Defendant Stevens did not witness the incident, he nevertheless

had a role in authoring misconduct report that Defendant McLain ultimately signed. ECF No. 8, ¶ 54. Glenn further alleges that Defendant Holland "got cold feet" and did not file a misconduct report but permitted himself to be listed as a witness on McLain's report. *Id.*, at ¶¶ 68, 100. None of these allegations or any other allegations relating to the misconduct report or proceedings support a due process violation.

The Fourteenth Amendment's Due Process Clause prohibits states from denying individuals "life, liberty[,] or property" without due process of law." *See* U.S. Const. amend. IXV. Procedural due process protection, however, "for a state created liberty interest ... is limited to those situations where deprivation of that interest 'imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life.'" *See Griffin v. Vaughn*, 112 F.3d 703, 706 (3d Cir. 1997) (quoting *Sandin v. Conner*, 515 U.S. 472, 484 (1995)).   Here, the duration of Glenn's confinement in the RHU and the circumstances of that confinement were not sufficient to trigger his due process rights. *Sandin*, 515 U.S. at 486.   Nevertheless, prison officials afforded Glenn constitutionally sufficient process to contest the misconduct charges against him.

A Hearing Officer conducted a hearing on the misconduct charges against Glenn on January 18, 2023. ECF No. 8, ¶ 67. Glenn acknowledges that he pleaded guilty to the charge of disobeying an order and that the Hearing Examiner found him guilty of assaulting an officer. *Id.* As an initial matter, "the filing of a fraudulent misconduct report and related disciplinary sanctions do not without more violate due process." *See Soldridge v. Ransom*, 2021 WL 5205907, at *3 (M.D. Pa. Nov. 9, 2021) (citing *Seville v. Martinez*, 130 Fed. Appx. 549, 551 (3d Cir. 2005)). Therefore, "so long as certain procedural requirements are satisfied, mere allegations of falsified evidence or misconduct reports, without more, are not enough to state a due process claim." *See Smith v. Mensinger*, 293 F.3d 641, 654 (3d Cir. 2002). Glenn acknowledges that he was afforded

a hearing on the charges, and he alleges no facts to support that he was denied the minimum due process required by the Constitution during that hearing. Accordingly, his claim fails as a matter of law. *See, e.g., Hart v. City of Philadelphia*, 779 Fed. Appx 121, 126 (3d Cir. 2019) (concluding that the district court correctly dismissed the inmate-plaintiff's due process claim regarding allegedly false misconduct charges because he had been given disciplinary hearings).

   F. Glenn's conspiracy claims will be dismissed.

   Glenn's Complaint is peppered with allegations that could be construed as attempts to raise civil conspiracy claims. *See e.g.*, ECF No. 8, ¶ 55 ("C.O. Himes, C.O. Spencer, C.O. Blum, C.O. Keppel, C.O. Yount, C.O. Slater, C.O. Carben, C.O. Bullers, Sergeant Kemp, Sergeant Fredrickson, worked together in a coordinated effort, each during their respective shifts in the RHU to further retaliate against Plaintiff by denying him of basic human needs…"). The Complaint fails, however, to support a conspiracy claim against any Defendant.

   "To demonstrate a conspiracy under § 1983, a plaintiff must show that two or more conspirators reached an agreement to deprive him or her of a constitutional right 'under color of law.'" *Parkway Garage, Inc. v. City of Philadelphia*, 5 F.3d 685, 700 (3d Cir. 1983), *abrogated on other grounds by United Artists Theatre Circuit, Inc. v. Twp. of Warrington*, 316 F.3d 392 (3d Cir. 2003). A plaintiff must plead an actual agreement among the parties to the alleged conspiracy. *See Watson v. Sec'y Pa. Dep't of Corr.*, 436 Fed. Appx. 131, 137 (3d Cir. 2011) (per curiam). "Mere conclusory allegations that a conspiracy existed will not survive a motion to dismiss." *Rogers v. Mount Union Borough ex rel. Zook*, 816 F. Supp. 308, 314 (M.D. Pa. 1993). "As 'the linchpin for conspiracy is agreement,' concerted action, without more, cannot suffice to state a conspiracy claim." *Watson*, 436 Fed. Appx. at 137. "[O]nly allegations which are particularized, such as those addressing the period of the conspiracy, the object of the conspiracy, and actions

taken in furtherance of the conspiracy, will be deemed sufficient." *Grigsby v. Kane*, 250 F. Supp. 2d 453, 458 (M.D. Pa. 2003); *see also Brown v. Camp Hill*, 2015 WL 5675575, at *5 (M.D. Pa. Sept. 25, 2015) ("A conspiracy claim requires more than mere speculation as to an agreement. Plaintiff must provide specific allegations of combination, agreement, or understanding among all or between any of the defendants to plot, plan or conspire to carry out the challenged conduct.") (internal quotation marks omitted). Here, Glen has failed to allege any particularized facts from which the Court might reasonably infer "a mutual understanding among the [alleged] conspirators to take action directed toward an unconstitutional end." *Grigsby*, 250 F. Supp. 2d at 458. His conspiracy claims will therefore be dismissed.

V.    Conclusion

For the foregoing reasons, the following claims shall be dismissed:

1.    All claims for monetary relief against all Defendants in their official capacities;

2.    All claims against Defendants Holland, Blicha, Walker, and Irwin, including Glenn's supervisory liability claims and "failure to protect/failure to act" claims;

3.    Glenn's retaliation claims against Defendants C.O. Himes, C.O. Spencer, C.O. Blum, C.O. Keppel, C.O. Yount, C.O. Slater, C.O. Carben, C.O. Bullers, Sergeant Kemp, and Sergeant Fredricks based on his time in the RHU;

4.    Glenn's Eighth Amendment conditions of confinement claims against Defendants Duffy, Himes, Spencer, Blum, Keppel, Bullers, Carben, Yount, Slater, Frederickson, and Kemp based on his confinement in the RHU.

5.    Glenn's Fourteenth Amendment due process claim against Defendants McLain, Stevens, and Holland; and

6.    Glenn's conspiracy claims against all Defendants.

VI.    Leave to Amend

District courts generally must permit a curative amendment if a complaint is vulnerable to dismissal for failure to state a claim unless an amendment would be inequitable or futile. *Grayson v. Mayview State Hosp.*, 293 F.3d 103, 108 (3d Cir. 2002).    However, a district court has "substantial leeway in deciding whether to grant leave to amend." *Lake v. Arnold*, 232 F.3d 360, 373 (3d Cir. 2000).  Here, amendment would be futile as to claims for monetary relief against all Defendants in their official capacities, Glenn's retaliation claim against Defendants Himes, Spencer, Blum, Keppel, Yount, Slater, Carben, Bullers, Kemp, and Fredricks based on his time in the RHU, and his Fourteenth Amendment due process claim against Defendants McLain, Stevens, and Holland.  These claims are dismissed with prejudice.

As to the other dismissed claims, the Court cannot say as a matter of law that amendment would be futile.    Accordingly, these claims are dismissed without prejudice and with leave to amend to cure their deficiencies. Failure to file an amended complaint within the time specified in the Order accompanying this Memorandum Opinion will result in the dismissal of all remaining claims with prejudice.

The following claims are unaffected by the Court's Opinion and Order and will proceed in any event:

1.    Glenn's excessive force claim against Defendants McLain and Guarneiri relating to the incident that took place on January 13, 2023;

2.    Glenn's First Amendment retaliation claim against McLain and Defendant Stevens based on their filing a false misconduct report against Glenn after he threatened to report McLain for using excessive force; and

3.      Glenn's retaliation claim against Defendant Manson based on Glenn's filing of grievances.

A separate Order follows.

DATED this 30th day of September 2024.

BY THE COURT:

RICHARD A. LANZILLO
CHIEF UNITED STATES MAGISTRATE JUDGE

26